Monte D. Beck
John L. Amsden
Justin P. Stalpes
Anthony Jackson
BECK, AMSDEN & STALPES, pllc
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Phone: (406) 586-8700
Fax:    (406) 586-8960
justin@becklawyers.com

*Attorneys for Plaintiff*

\* \* \* \* \* \* \*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| RON BIORN<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX, INC.<br><br>Defendant. | Cause No. *CV-17-71-BU-BMM*<br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES** |

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Ron Biorn is a resident of Three Forks, Gallatin County,

Montana.

2.      Defendant Equifax Inc. is a corporation incorporated under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street NE, Atlanta, GA, and doing business in the State of Montana. Equifax operates through various subsidiaries, and each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

3.      Equifax is a "Consumer Reporting Agency" (or "CRA") as that term is defined by 15 U.S.C. § 1681a(f).

4.      Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.S.C. § 1681a(p).

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

6.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiff resides within this District, a substantial portion of the events or

omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

## INTRODUCTION

8.      The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to ensure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy. The FCRA imposes duties on the CRAs to protect consumers' sensitive personal information.

9.      FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information. Thus, through FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

10.     A central duty that FCRA imposes upon CRAs is the duty to protect

the consumer's privacy by guarding against inappropriate disclosure to third

parties. 15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a

consumer's information only for one of a handful of exclusively defined

"permissible purposes." To ensure compliance, CRAs must maintain reasonable

procedures to ensure that such third party disclosures are made exclusively for

permissible purposes. 15 U.S.C. § 1681e(a).

11.     FCRA defines "consumer report" broadly, as "any written, oral, or

other communication of any information by a CRA bearing on a consumer's credit

worthiness, credit standing, credit capacity, character, general reputation, personal

characteristics, or mode of living which is used or expected to be used or collected

in whole or in part for the purpose of serving as a factor in establishing the

consumer's eligibility for (A) credit or insurance to be used primarily for personal,

family, or household purposes; (B) employment purposes; or (C) any other purpose

authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

12.     FCRA also entitles the consumer to take an active role in the

protection of his or her sensitive personal information, by giving the consumer a

right to request "All information in the consumer's file at the time of the request."

15 U.S.C. § 1681g(a)(1). Through immediate review of the details of when, and for

what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.

13.     FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft. Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency. 15 U.S.C. § 1681c-1. The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven years. 15 U.S.C. § 1681c-1(a)-(b). In the event a consumer requests "extended" protection, a consumer reporting agency must remove the consumer from any list of third parties to whom the agency sends the consumer's information to extend firm offers of credit, and keep the consumer off of any such a list for five years, unless the consumer requests otherwise. 15 U.S.C. § 1681c-1(b)(1)(B). After being notified of a fraud alert, a CRA must send notification of the alert to the consumer reporting agencies which report information on a nationwide basis. 15 U.S.C. § 1681c-1(a)(1)(B); *see* 15 U.S.C. 1681a(p).

14.     After fraud notification, FCRA provides the consumer additional rights to independently monitor their credit information to protect their privacy. Specifically, once notified of a consumer's fraud notification, a CRA must, within three days of the notification, provide the consumer with all of the disclosures

required under 15 U.S.C. § 1681g. 15 U.S.C. §§ 1681c-1(a)(2), 1681c-1(b)(2).
When a consumer requests that an "extended" fraud alert be placed on their files,
the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g
within the 12-month period following notification of a fraud alert. 15 U.S.C. §
1681c-1(b).

15.    Thus, through immediate review of the details of when, and for what
purpose, a consumer's private information has been disclosed to a third party, a
consumer may better understand whether their identity has been stolen. And
through semi-annual review of their consumer disclosures in the case of an
"extended" alert, a consumer can periodically check to determine whether efforts
to protect their identity after potential fraud have not been successful. Thus, FCRA
presupposes that consumers subject to potential fraud should be permitted the
immediate opportunity to investigate the issues themselves and ascertain the extent
of any suspected fraud.

16.    Defendant failed to properly safeguard the information of Plaintiff and
the Class Members, as required under 15 U.S.C. § 1681e(a).

17.    Plaintiff, individually and on behalf of those similarly situated, brings
this action to challenge the actions of Defendant in the protection and safekeeping
of Plaintiff's and the Class Members' personal information.

18.     Plaintiff files this complaint on behalf of Montana residents harmed by Equifax's failure to adequately protect their credit and personal information. This complaint requests Equifax provide fair compensation in an amount that will ensure every consumer harmed by its data breach will not be out-of-pocket for the costs of independent third-party credit repair and monitoring services.

## GENERAL ALLEGATIONS

19.     Equifax, a global corporation, "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers." (http://www.equifax.com/about-equifax/company-profile/ (September 11, 2017)).

20.     The data Equifax stores includes Plaintiff's and Class Members' personal identifying information, such as names, full Social Security numbers, birth dates, addresses, driver's license numbers, and credit card numbers (collectively, "PII"). At all relevant times, Equifax knew or should have known that the PII it collected and stored is valuable, highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties.

21.     On July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiff's sensitive personal information including Plaintiff's

name, full Social Security number, birth date, address, and, upon belief, his driver's license number and possibly one or more of his credit cards, had been breached or "hacked" by a still unknown third party.

22.    Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted. As of the filing of this Complaint, that investigation remains ongoing and has yet been completed despite over six weeks elapsing since the initial breach.

23.    On September 7, 2017, major news outlets began reporting about the July 29, 2017 incident. (See, e.g., Massive Equifax Data Breach Could Impact Half of the U.S. Population, Alyssa Newcomb, NBCNEWS, Sept. 7, 2018, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-spopulation-n799686).

24.    For Plaintiff, as with all potential Class Members, these news stories were the first time that they had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

25.     After Equifax discovered the breach but before notifying Plaintiff,

Class Members, and all other consumers, three (3) Equifax executives, including

the Chief Financial Officer, John Gamble, sold shares of Equifax stock worth a

combined $1,800,000. (See, e.g., Equifax Faces Multibillion-Dollar Lawsuit over

Hack, Polly Mosendz, BLOOMBERG, Sept. 8, 2017, available at: ccccc).

26.     Equifax's decision to wait six (6) weeks after the alleged data breach

before informing all consumers of the same was willful, or at least negligent.

Further, by depriving Plaintiff and Class Members' timely information about the

breach, Equifax subjected each consumer to a concrete informational injury, as

these consumers were deprived of their opportunity to meaningfully consider and

address issues related to the potential fraud, as well as to avail themselves of the

remedies available under FCRA to prevent further dissemination of their private

information.

27.     Equifax has been subject to numerous allegations regarding data

breaches in the past. (See, e.g., A Brief History of Equifax Security Fails, Thomas

Fox-Brewster, FORBES, Sept. 8, 2017, available at:

https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-databreach-

history/#63dc4270677c). In light of Equifax's continual failure to ensure the

integrity of its file storage systems given known defects in those systems, Equifax

BECK, AMSDEN & STALPES, pllc
CLASS ACTION COMPLAINT FOR DAMAGES                                          9

recklessly, willfully, or at the very least, negligently failed to use reasonable care
or to enact reasonable procedures and/or technological safeguards to ensure that
consumer reports would only be provided for a permissible purpose. By failing to
establish reasonable procedures to safeguard individual consumer's private
information, Equifax deprived millions of consumers of a benefit conferred on
them by Congress, which, now lost, cannot be reclaimed.

28.     Equifax knew or should have known that failing to protect consumers'
PII from unauthorized access would result in a massive data breach and would
expose consumers to serious harm such as identity theft.

29.     The unauthorized disclosure and dissemination of private credit
information causes immediate harm. At the time that the unauthorized breaches
occurred, Plaintiff and the Class Members began to incur, and continue to incur,
such harm.

30.     Furthermore, the PII that unauthorized third parties took from Equifax
includes multiple types of sensitive information on a single person, the aggregate
value of which is greater than the sum of each individual datum. This further
exacerbates the extent of Plaintiff's and the Class Members' injuries.

31.     Defendant's acts and omissions have diminished the value of
Plaintiff's and the Class Members' PII.

32.     As a direct and proximate result of Equifax's acts and/or omissions, Plaintiff and the Class Members have suffered imminent and impending injury arising from the subsequently increased risk of future fraud, identity theft and misuse of their PII.

33.     On September 7, 2017, Equifax began to offer consumers like Plaintiff and Class Members an allegedly dedicated secure website where consumers could determine if their PII was compromised (https://www.equifaxsecurity2017.com) and offer consumers "free" credit monitoring through an Equifax product, TrustedID Premier (https://www.equifaxsecurity2017.com/enroll/), for one year.

34.     However under the guise of providing victims the opportunity to mitigate their damages, Equifax offered Class Members free access to its TrustedID Premier service, the terms and conditions of which require that the victims, including Plaintiff and Class Members, waive their right to bring or participate in a class action lawsuit and require them to submit to arbitration (http://www.equifax.com/terms/). These actions are yet another avenue by which Equifax has deprived Plaintiff and the Class Members of the ability to avail themselves of the remedies available under FCRA and to prevent further dissemination of their private information.

BECK, AMSDEN & STALPES, pllc
CLASS ACTION COMPLAINT FOR DAMAGES                                          11

## CLASS ALLEGATIONS

35.     Plaintiff files this complaint as a Montana class action lawsuit. The

Montana Class consists of Montana consumers who:

      a) Had personal or credit data collected and stored by Equifax in the
         past year, and

      b) Who were subject to risk of data loss and credit harm and identity
         theft or had to pay for third-party credit monitoring services as a
         result of Equifax's negligent data breach from May to July 2017.

36.     Excluded from the class are all attorneys for the class, officers and

members of Equifax, including officers and members of any entity with an

ownership interest in Equifax, any judge who sits on the case, and all jurors and

alternate jurors who sit on the case.

37.     All members of the Class have been subject to and affected by a

uniform course of conduct in that all Class Members' personal information was

compromised during the data breach.

38.     There are questions of law and fact common to the proposed Class

that predominate over any individual questions.

39.     The questions common to all Class Members include, but are not

limited to:

      a.     Whether Defendant had implemented reasonable procedures to
           ensure that all third parties who accessed Plaintiff's and Class

members' private credit information did so for a permissible
purpose;

b.    Whether Defendant failed to notify consumers of the data
breach within a reasonable period of time;

c.    Whether Defendant owed a fiduciary duty to the Class
members, and whether such a fiduciary duty was breached by
failing to property protect the PII and failing to notify the Class
members of the breach in a timely fashion;

d.    Whether Defendant failed to block the reporting of information
on consumers' files that were the result of the data breach;

e.    Whether Plaintiff and Class members suffered damages as a
result of Defendant's failure to comply with FCRA based on the
improper dissemination of their credit information as a result of
the data breach;

f.    Whether Plaintiff and Class members are entitled to statutory
damages; and

g.    Whether Plaintiff and Class members are entitled to punitive
damages.

40.    In addition, questions of law and fact common to the proposed
Maryland Class include, but are not limited to, whether Defendant's acts and/or
omissions constitute a violation of the Montana Consumer Protection Act and
Montana's Constitutional Right to Privacy.

41.    Plaintiff's claims are typical of the Montana Class, as Plaintiff's
personal information was compromised during the data breach. All claims are
based on the same legal and factual issues.

42.     Plaintiff will fairly and adequately represent the interests of the Class.

43.     If individual class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy.

44.     Plaintiff's counsel has significant experience litigating class actions, including consumer class actions such as this one, are qualified and competent, and will vigorously prosecute this litigation.

45.     Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Classes, respectively, as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. 1681, et seq.

46.     Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

47.     Based upon Equifax's failure to have reasonable procedures in place, Plaintiff's private information was compromised, and neither Plaintiff nor any of the Class members received notice of the data breach, except through the media, approximately six (6) weeks after the breach occurred.

48. As a result of each and every willful violation of FCRA, Plaintiff and the Montana Class Members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

49. As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: BREACH OF FIDUCIARY DUTY

50. Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

51. Defendant owed duties to the Class, including fiduciary duties of the highest standard of care and diligence in connection with its handling and safeguard of personal and confidential information.

52. The conduct alleged herein constitutes a breach of the Defendant's fiduciary obligations.

53. This conduct caused damages to Plaintiff and members of the proposed class.

BECK, AMSDEN & STALPES, pllc
CLASS ACTION COMPLAINT FOR DAMAGES                                           15

## COUNT THREE: CONSTITUTIONAL RIGHT TO PRIVACY

54.     Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

55.     Under the Montana Constitution, Plaintiff and the other class enjoy the fundamental, inalienable and self-executing constitutional right to individual privacy.

56.     Defendant's conduct as described herein constitutes material violations of the Constitutional privacy rights of Plaintiff and other class members.

57.     Defendant's violations of students' privacy rights have caused damages to Plaintiff and others.

58.     Plaintiff and the members of the proposed class are entitled to damages and equitable relief as a result of such violations.

## COUNT FOUR: NEGLIGENCE

59.     Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

60.     Equifax owed a duty to Plaintiff and members of the Montana Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting their personal and financial information in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. This

duty included, among other things, designing, maintaining, and testing Equifax's security systems to ensure that Plaintiff's and Class members' personal and financial information in Equifax's possession was adequately secured and protected. Equifax further owed a duty to Plaintiff and Montana Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

61.    Equifax owed a duty of care to Plaintiff and Montana Class members because they were foreseeable and probable victims of any inadequate security practices.

62.    Equifax owed a duty to Plaintiff and members of the Montana Class to provide security, including consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the personal and financial information.

63.    Equifax knew, or should have known, of the risks inherent in collecting and storing the personal and financial information of Plaintiff and members of the Montana Class and of the critical importance of providing adequate security of that information.

64. Equifax could have easily prevented this data breach from ever occurring. Equifax failed to take adequate and reasonable measures to ensure its data systems were protected against theft, ignored warnings and previous indications that hackers had breached its systems and failed to take actions that could have stopped the breach. Equifax failed to disclose to its consumers that its computer systems and security practices were inadequate to reasonably safeguard customers' personal and financial information and failed to immediately and accurately notify its customers of the data breach. As a direct result of Equifax's conduct, Plaintiff and members of the Montana Class were injured.

65. Equifax was at all times fully aware of its obligations under the law and various standards and regulations to protect data entrusted to it by consumers.

66. Equifax breached its legal duty by failing to maintain adequate technological safeguards, falling below the standard of care in the technological industry, directly and proximately causing foreseeable risk of data loss and credit harm and identity theft and other economic losses, in amounts to be decided by the jury.

67. But for Equifax's wrongful and negligent breach of its duties owed to Plaintiff and members of the Montana Class, their personal and financial information would not have been compromised.

## COUNT FIVE: BREACH OF IMPLIED CONTRACT

68.     Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

69.     when Plaintiff and members of the Montana Class provided their financial and personal information to Equifax in order for Equifax to store and provide credit information, Plaintiff and members of the Montana Class entered into implied contracts with Equifax pursuant to which Equifax agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class members that their data had been breached and compromised.

70.     Equifax solicited and invited Plaintiff and members to use their services. Plaintiff and members of the Montana Class accepted Equifax's offers and used the credit monitoring service during the period of the Equifax data breach.

71.     Plaintiff and class members would not have provided and entrusted their financial and personal information to Equifax in the absence of the implied contract between them and Equifax.

72.     Plaintiff and members of the Montana Class fully performed their obligations under the implied contracts with Equifax.

73.     Equifax breached the implied contracts it made with Plaintiff and
Montana Class members by failing to safeguard and protect the personal and
financial information of Plaintiff and members of the Montana Class and by failing
to provide timely and accurate notice to them that their personal and financial
information was compromised in and as a result of Equifax data breach.

74.     The losses and damages sustained by Plaintiff and Class members as
described herein were the direct and proximate result of Equifax's breaches of the
implied contracts between Equifax and Plaintiff and members of the Montana
Class.

## COUNT SIX: VIOLATION OF

## MONTANA'S CONSUMER PROTECTION ACT

75.     Plaintiff hereby incorporates every other allegation in this complaint
as though fully set forth herein.

76.     Equifax's failure to maintain adequate computer systems and data
security practices to safeguard customers' personal and financial information,
Equifax's failure to disclose the material fact that Equifax's computer systems and
data security practices were inadequate to safeguard customers' personal and
financial data from theft, Equifax's failure to disclose in a timely and accurate
manner to Consumer Plaintiff and members of the Ohio Class the material fact of

the Equifax data security breach, and Equifax's continued acceptance of Consumer Plaintiffs' and Class members' credit and debit card and other personal information after Equifax knew or should have known of the data breach and before it purged its systems of the hackers' malware, constitutes unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices.

77. By engaging in such conduct and omissions of material facts, Equifax has violated Montana's Consumer Protection Act, codified at Mont. Code Ann. § 30-14-101 *et. seq*.

78. Damages include: a) theft of their personal and financial information; b) costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Equifax data breach; d) the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit card and personal information being placed in the hands of criminals; e) damages to and diminution in value of their personal and financial information; and f) the continued risk to their personal information.

## COUNT FIVE: PUNITIVE DAMAGES

79. Each and every allegation set forth in this complaint is incorporated

herein by reference.

80.     Defendants acted with actual fraud or actual malice. Defendants knew or had reason to know facts that would have led a reasonable business and person of like size to realize that their conduct, acts and omissions were likely to cause injury to Plaintiff and the Class Members.

81.     Defendants deliberately proceeded to act with indifference to or with conscious disregard of the high probability of injury to the Class Members by their violation of Montana law.

<b><u>PRAYER FOR RELIEF</u></b>

Plaintiff seeks relief for himself and the Montana Class as follows:

a.     Certify this case as a class action, appoint Plaintiff as a class representative and appoint Plaintiff's counsel to represent the class;

b. Find that Equifax breached its duty to safeguard and protect Plaintiff and the Class Members' PII which was compromised in the Data Breach;

c. Award Plaintiff and Class Members appropriate relief, including actual damages, punitive damages, and statutory damages;

d. Award equitable, injunctive, declaratory relief as appropriate;

e. Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f. Award pre-judgment and post-judgment interest as prescribed by law; and

g. Grant additional legal or equitable relief as the Court may find just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

DATED, this 14th day of September, 2017

SUBMITTED BY:

BECK, AMSDEN & STALPES pllc

By:   /s/Justin P. Stalpes
      Justin P. Stalpes, Esq.

*Attorney for Plaintiff*

BECK, AMSDEN & STALPES, pllc
CLASS ACTION COMPLAINT FOR DAMAGES