Monte D. Beck
John L. Amsden
Justin P. Stalpes
Anthony Jackson
BECK, AMSDEN & STALPES, pllc
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Phone: (406) 586-8700
Fax:    (406) 586-8960
mbeck@becklawyers.com
amsden@becklawyers.com
justin@becklawyers.com
anthony@becklawyers.com

*Attorneys for Plaintiff*

* * * * * * *

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

* * * * * * *

| | |
|---|---|
| RON BIORN, RONNIE G. BIORN, BRANDY POOLE, MARGARET HENKEL, MEGAN STAKER, and JIMMY SMITH<br><br>Plaintiffs,<br><br>vs.<br><br>EQUIFAX, INC.<br><br>Defendant. | Cause No. CV-17-71-BU-BMM<br><br><br>**AMENDED CLASS ACTION COMPLAINT FOR DAMAGES** |

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Megan Staker is a resident of Bozeman, Gallatin County, Montana.

2.      Plaintiff Ron Biorn is a resident of Three Forks, Gallatin County, Montana.

3.      Plaintiff Ronnie G. Biorn is a resident of Three Forks, Gallatin County, Montana.

4.      Plaintiff Brandy Poole is a resident of Three Forks, Gallatin County, Montana.

5.      Plaintiff Margaret Henkel is a resident of Belgrade, Gallatin County, Montana.

6.      Plaintiff Jimmy Smith is a resident of Kalispell, Flathead County, Montana.

7.      Defendant Equifax Inc. is a corporation incorporated under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street NE, Atlanta, GA, and doing business in the State of Montana. Equifax operates through various subsidiaries, and each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

8.      Equifax is a "Consumer Reporting Agency" (or "CRA") as that term is defined by 15 U.S.C. § 1681a(f).

9.      Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.S.C. § 1681a(p).

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

11.     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiffs reside within this District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

## INTRODUCTION

13.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of

the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §
1681, *et seq.* ("FCRA"), to ensure fair and accurate credit reporting, promote
efficiency in the banking system, and, as most relevant to this Complaint, protect
consumer privacy. The FCRA imposes duties on the CRAs to protect consumers'
sensitive personal information.

14.     FCRA protects consumers through a tightly wound set of procedural
protections from the material risk of harms that otherwise follow from the
compromise of a consumer's sensitive personal information. Thus, through FCRA,
Congress struck a balance between the credit industry's desire to base credit
decisions on accurate information, and a consumer's substantive right to protection
from damage to reputation, shame, mortification, and emotional distress that
naturally follows from the compromise of a person's identity.

15.     A central duty that FCRA imposes upon CRAs is the duty to protect
the consumer's privacy by guarding against inappropriate disclosure to third
parties. 15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a
consumer's information only for one of a handful of exclusively defined
"permissible purposes." To ensure compliance, CRAs must maintain reasonable
procedures to ensure that such third party disclosures are made exclusively for
permissible purposes. 15 U.S.C. § 1681e(a).

16.     FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

17.     FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.

18.     FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft. Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency. 15 U.S.C. § 1681c-1. The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven

years. 15 U.S.C. § 1681c-1(a)-(b). In the event a consumer requests "extended"

protection, a consumer reporting agency must remove the consumer from any list

of third parties to whom the agency sends the consumer's information to extend

firm offers of credit, and keep the consumer off of any such a list for five years,

unless the consumer requests otherwise. 15 U.S.C. § 1681c-1(b)(1)(B). After being

notified of a fraud alert, a CRA must send notification of the alert to the consumer

reporting agencies which report information on a nationwide basis. 15 U.S.C. §

1681c-1(a)(1)(B); *see* 15 U.S.C. 1681a(p).

19.     After fraud notification, FCRA provides the consumer additional

rights to independently monitor their credit information to protect their privacy.

Specifically, once notified of a consumer's fraud notification, a CRA must, within

three days of the notification, provide the consumer with all of the disclosures

required under 15 U.S.C. § 1681g. 15 U.S.C. §§ 1681c-1(a)(2), 1681c-1(b)(2).

When a consumer requests that an "extended" fraud alert be placed on their files,

the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g

within the 12-month period following notification of a fraud alert. 15 U.S.C. §

1681c-1(b).

20.     Thus, through immediate review of the details of when, and for what

purpose, a consumer's private information has been disclosed to a third party, a

consumer may better understand whether their identity has been stolen. And through semi-annual review of their consumer disclosures in the case of an "extended" alert, a consumer can periodically check to determine whether efforts to protect their identity after potential fraud have not been successful. Thus, FCRA presupposes that consumers subject to potential fraud should be permitted the immediate opportunity to investigate the issues themselves and ascertain the extent of any suspected fraud.

21.     Defendant failed to properly safeguard the information of Plaintiffs and the Class Members, as required under 15 U.S.C. § 1681e(a).

22.     Plaintiffs, individually and on behalf of those similarly situated, bring this action to challenge the actions of Defendant in the protection and safekeeping of Plaintiffs' and the Class Members' personal information.

23.     Plaintiffs file this complaint on behalf of Montana residents harmed by Equifax's failure to adequately protect their credit and personal information. This complaint requests Equifax provide fair compensation in an amount that will ensure every consumer harmed by its data breach will not be out-of-pocket for the costs of independent third-party credit repair and monitoring services.

## GENERAL ALLEGATIONS

24.     Equifax, a global corporation, "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers." (http://www.equifax.com/about-equifax/company-profile/ (September 11, 2017)).

25.     The data Equifax stores includes Plaintiffs' and Class Members' personal identifying information, such as names, full Social Security numbers, birth dates, addresses, driver's license numbers, and credit card numbers (collectively, "PII"). At all relevant times, Equifax knew or should have known that the PII it collected and stored is valuable, highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties.

26.     On July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiffs' sensitive personal information including Plaintiffs' names, full Social Security numbers, birth dates, addresses, and, upon belief, their driver's license numbers and possibly one or more of their credit cards, had been breached or "hacked" by a still unknown third party.

27.     Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified

**BECK, AMSDEN & STALPES, pllc**
**AMENDED CLASS ACTION COMPLAINT FOR**
**DAMAGES**                                                              8

third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted. As of the filing of this Complaint, that investigation remains ongoing and has yet been completed despite over six weeks elapsing since the initial breach.

28.    On September 7, 2017, major news outlets began reporting about the July 29, 2017 incident. (See, e.g., Massive Equifax Data Breach Could Impact Half of the U.S. Population, Alyssa Newcomb, NBCNEWS, Sept. 7, 2018, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-spopulation-n799686).

29.    For Plaintiffs, as with all potential Class Members, these news stories were the first time that they had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

30.    After Equifax discovered the breach but before notifying Plaintiffs, Class Members, and all other consumers, three (3) Equifax executives, including the Chief Financial Officer, John Gamble, sold shares of Equifax stock worth a combined $1,800,000. (See, e.g., Equifax Faces Multibillion-Dollar Lawsuit over Hack, Polly Mosendz, BLOOMBERG, Sept. 8, 2017, available at: ccccc).

31.     Equifax's decision to wait six (6) weeks after the alleged data breach before informing all consumers of the same was willful, or at least negligent. Further, by depriving Plaintiffs and Class Members' timely information about the breach, Equifax subjected each consumer to a concrete informational injury, as these consumers were deprived of their opportunity to meaningfully consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under FCRA to prevent further dissemination of their private information.

32.     Equifax has been subject to numerous allegations regarding data breaches in the past. (See, e.g., A Brief History of Equifax Security Fails, Thomas Fox-Brewster, FORBES, Sept. 8, 2017, available at: https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-databreach-history/#63dc4270677c). In light of Equifax's continual failure to ensure the integrity of its file storage systems given known defects in those systems, Equifax recklessly, willfully, or at the very least, negligently failed to use reasonable care or to enact reasonable procedures and/or technological safeguards to ensure that consumer reports would only be provided for a permissible purpose. By failing to establish reasonable procedures to safeguard individual consumer's private

information, Equifax deprived millions of consumers of a benefit conferred on them by Congress, which, now lost, cannot be reclaimed.

33.     Equifax knew or should have known that failing to protect consumers' PII from unauthorized access would result in a massive data breach and would expose consumers to serious harm such as identity theft.

34.     The unauthorized disclosure and dissemination of private credit information causes immediate harm. At the time that the unauthorized breaches occurred, Plaintiffs and the Class Members began to incur, and continue to incur, such harm.

35.     Furthermore, the PII that unauthorized third parties took from Equifax includes multiple types of sensitive information on a single person, the aggregate value of which is greater than the sum of each individual datum. This further exacerbates the extent of Plaintiffs' and the Class Members' injuries.

36.     Defendant's acts and omissions have diminished the value of Plaintiffs' and the Class Members' PII.

37.     As a direct and proximate result of Equifax's acts and/or omissions, Plaintiffs and the Class Members have suffered imminent and impending injury arising from the subsequently increased risk of future fraud, identity theft and misuse of their PII.

38.     On September 7, 2017, Equifax began to offer consumers like Plaintiffs and Class Members an allegedly dedicated secure website where consumers could determine if their PII was compromised (https://www.equifaxsecurity2017.com) and offer consumers "free" credit monitoring through an Equifax product, TrustedID Premier (https://www.equifaxsecurity2017.com/enroll/), for one year.

39.     However under the guise of providing victims the opportunity to mitigate their damages, Equifax offered Class Members free access to its TrustedID Premier service, the terms and conditions of which require that the victims, including Plaintiffs and Class Members, waive their right to bring or participate in a class action lawsuit and require them to submit to arbitration (http://www.equifax.com/terms/). These actions are yet another avenue by which Equifax has deprived Plaintiffs and the Class Members of the ability to avail themselves of the remedies available under FCRA and to prevent further dissemination of their private information.

## CLASS ALLEGATIONS

40.     Plaintiffs file this complaint as a Montana class action lawsuit. The Montana Class consists of Montana consumers who:

a) Had personal or credit data collected and stored by Equifax in the past year, and

b) Who were subject to risk of data loss and credit harm and identity theft or had to pay for third-party credit monitoring services as a result of Equifax's negligent data breach from May to July 2017.

41.   Excluded from the class are all attorneys for the class, officers and members of Equifax, including officers and members of any entity with an ownership interest in Equifax, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

42.   All members of the Class have been subject to and affected by a uniform course of conduct in that all Class Members' personal information was compromised during the data breach.

43.   There are questions of law and fact common to the proposed Class that predominate over any individual questions.

44.   The questions common to all Class Members include, but are not limited to:

a.   Whether Defendant had implemented reasonable procedures to ensure that all third parties who accessed Plaintiffs' and Class members' private credit information did so for a permissible purpose;

b.   Whether Defendant failed to notify consumers of the data breach within a reasonable period of time;

c.    Whether Defendant owed a fiduciary duty to the Class members, and whether such a fiduciary duty was breached by failing to property protect the PII and failing to notify the Class members of the breach in a timely fashion;

d.    Whether Defendant failed to block the reporting of information on consumers' files that were the result of the data breach;

e.    Whether Plaintiffs and Class members suffered damages as a result of Defendant's failure to comply with FCRA based on the improper dissemination of their credit information as a result of the data breach;

f.    Whether Plaintiffs and Class members are entitled to statutory damages; and

g.    Whether Plaintiffs and Class members are entitled to punitive damages.

45.    In addition, questions of law and fact common to the proposed Montana Class include, but are not limited to, whether Defendant's acts and/or omissions constitute a violation of the Montana Consumer Protection Act and Montana's Constitutional Right to Privacy.

46.    Plaintiffs' claims are typical of the Montana Class, as Plaintiffs' personal information was compromised during the data breach. All claims are based on the same legal and factual issues.

47.    Plaintiffs will fairly and adequately represent the interests of the Class.

48.     If individual class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy.

49.     Plaintiffs' counsel has significant experience litigating class actions, including consumer class actions such as this one, are qualified and competent, and will vigorously prosecute this litigation.

50.     Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Classes, respectively, as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. 1681, et seq.

51.     Plaintiffs restate all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

52.     Based upon Equifax's failure to have reasonable procedures in place, Plaintiffs' private information was compromised, and neither Plaintiffs nor any of the Class members received notice of the data breach, except through the media, approximately six (6) weeks after the breach occurred.

53.     As a result of each and every willful violation of FCRA, Plaintiffs and the Montana Class Members are entitled to: actual damages, pursuant to 15 U.S.C.

§ 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

54.     As a result of each and every negligent non-compliance of the FCRA, Plaintiffs and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: BREACH OF FIDUCIARY DUTY

55.     Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

56.     Defendant owed duties to the Class, including fiduciary duties of the highest standard of care and diligence in connection with its handling and safeguard of personal and confidential information.

57.     The conduct alleged herein constitutes a breach of the Defendant's fiduciary obligations.

58.     This conduct caused damages to Plaintiffs and members of the proposed class.

## COUNT THREE: CONSTITUTIONAL RIGHT TO PRIVACY

59.     Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

60.     Under the Montana Constitution, Plaintiffs and the other class enjoy the fundamental, inalienable and self-executing constitutional right to individual privacy.

61.     Defendant's conduct as described herein constitutes material violations of the Constitutional privacy rights of Plaintiffs and other class members.

62.     Defendant's violations of Plaintiffs' and other class members' privacy rights have caused damages to Plaintiffs and others.

63.     Plaintiffs and the members of the proposed class are entitled to damages and equitable relief as a result of such violations.

## COUNT FOUR: NEGLIGENCE

64.     Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

65.     Equifax owed a duty to Plaintiffs and members of the Montana Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting their personal and financial information in its possession from being

compromised, lost, stolen, accessed and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Equifax's security systems to ensure that Plaintiffs' and Class members' personal and financial information in Equifax's possession was adequately secured and protected. Equifax further owed a duty to Plaintiffs and Montana Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

66.    Equifax owed a duty of care to Plaintiffs and Montana Class members because they were foreseeable and probable victims of any inadequate security practices.

67.    Equifax owed a duty to Plaintiffs and members of the Montana Class to provide security, including consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the personal and financial information.

68.    Equifax knew, or should have known, of the risks inherent in collecting and storing the personal and financial information of Plaintiffs and members of the Montana Class and of the critical importance of providing adequate security of that information.

69.     Equifax could have easily prevented this data breach from ever occurring. Equifax failed to take adequate and reasonable measures to ensure its data systems were protected against theft, ignored warnings and previous indications that hackers had breached its systems and failed to take actions that could have stopped the breach. Equifax failed to disclose to its consumers that its computer systems and security practices were inadequate to reasonably safeguard customers' personal and financial information and failed to immediately and accurately notify its customers of the data breach. As a direct result of Equifax's conduct, Plaintiffs and members of the Montana Class were injured.

70.     Equifax was at all times fully aware of its obligations under the law and various standards and regulations to protect data entrusted to it by consumers.

71.     Equifax breached its legal duty by failing to maintain adequate technological safeguards, falling below the standard of care in the technological industry, directly and proximately causing foreseeable risk of data loss and credit harm and identity theft and other economic losses, in amounts to be decided by the jury.

72.     But for Equifax's wrongful and negligent breach of its duties owed to Plaintiffs and members of the Montana Class, their personal and financial information would not have been compromised.

## COUNT FIVE: BREACH OF IMPLIED CONTRACT

73.     Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

74.     When Plaintiffs and members of the Montana Class provided their financial and personal information to Equifax in order for Equifax to store and provide credit information, Plaintiffs and members of the Montana Class entered into implied contracts with Equifax pursuant to which Equifax agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class members that their data had been breached and compromised.

75.     Equifax solicited and invited Plaintiffs and members to use their services. Plaintiffs and members of the Montana Class accepted Equifax's offers and used the credit monitoring service during the period of the Equifax data breach.

76.     Plaintiffs and class members would not have provided and entrusted their financial and personal information to Equifax in the absence of the implied contract between them and Equifax.

77.     Plaintiffs and members of the Montana Class fully performed their obligations under the implied contracts with Equifax.

78.     Equifax breached the implied contracts it made with Plaintiffs and Montana Class members by failing to safeguard and protect the personal and financial information of Plaintiffs and members of the Montana Class and by failing to provide timely and accurate notice to them that their personal and financial information was compromised in and as a result of Equifax data breach.

79.     The losses and damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of Equifax's breaches of the implied contracts between Equifax and Plaintiffs and members of the Montana Class.

## COUNT SIX: VIOLATION OF
## MONTANA'S CONSUMER PROTECTION ACT

80.     Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

81.     Equifax's failure to maintain adequate computer systems and data security practices to safeguard customers' personal and financial information, Equifax's failure to disclose the material fact that Equifax's computer systems and data security practices were inadequate to safeguard customers' personal and financial data from theft, Equifax's failure to disclose in a timely and accurate manner to Consumer Plaintiffs and members of the Montana Class the material

fact of the Equifax data security breach, and Equifax's continued acceptance of Consumer Plaintiffs' and Class members' credit and debit cards and other personal information after Equifax knew or should have known of the data breach and before it purged its systems of the hackers' malware, constitutes unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices.

82.    By engaging in such conduct and omissions of material facts, Equifax has violated Montana's Consumer Protection Act, codified at Mont. Code Ann. § 30-14-101 *et. seq*.

83.    Damages include: a) theft of their personal and financial information; b) costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Equifax data breach; d) the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit card and personal information being placed in the hands of criminals; e) damages to and diminution in value of their personal and financial information; and f) the continued risk to their personal information.

## COUNT SEVEN: PUNITIVE DAMAGES

84.     Each and every allegation set forth in this complaint is incorporated herein by reference.

85.     Defendant acted with actual fraud or actual malice. Defendant knew or had reason to know facts that would have led a reasonable business and person of like size to realize that their conduct, acts and omissions were likely to cause injury to Plaintiffs and the Class Members.

86.     Defendant deliberately proceeded to act with indifference to or with conscious disregard of the high probability of injury to Plaintiffs and the Class Members by their violation of Montana law.

## PRAYER FOR RELIEF

Plaintiffs seek relief for themselves and the Montana Class as follows:

a.     Certify this case as a class action, appoint Plaintiffs as class representatives and appoint Plaintiffs' counsel to represent the class;

b.     Find that Equifax breached its duty to safeguard and protect Plaintiffs and the Class Members' PII which was compromised in the Data Breach;

c.      Award Plaintiffs and Class Members appropriate relief,

including actual damages, punitive damages, and statutory damages;

d.      Award equitable, injunctive, declaratory relief as appropriate;

e.      Award all costs, including experts' fees and attorneys' fees, and

the costs of prosecuting this action;

f.      Award pre-judgment and post-judgment interest as prescribed

by law; and

g.      Grant additional legal or equitable relief as the Court may find

just and proper.

### <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury.

DATED, this 18th day of September, 2017

SUBMITTED BY:

BECK, AMSDEN & STALPES pllc

By:    /s/Justin P. Stalpes
       Justin P. Stalpes¸ Esq.

*Attorney for Plaintiffs*